IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Timothy A. Michael and Melinda V. Michael,              ) | Civil Action No. 2:11-cv-2709-RMG |
| ) | |
| Plaintiffs,              ) | |
| v.              ) | **ORDER** |
| ) | |
| Kiawah Island Real Estate, LLC; Gordon J. Hillock; The Guerry Group, LLC; Joseph H. Guerry; and Lisa G. McCaskill,              ) | |
| ) | |
| Defendants.              ) | |
| ) | |

This matter comes before the Court on Defendants' motions to dismiss. (Dkt. Nos. 8 and 19). As explained herein, the Court finds that Defendants have failed to establish, at this early stage of the litigation and under Rule 12(b)(6) standards, that Plaintiffs' claims are barred by the applicable statute of limitations, and the Court therefore denies Defendants' motions to dismiss.

**I.   Background**

In this case, Plaintiffs allege that they overpaid for a house which they purchased on Kiawah Island, South Carolina in October of 2005, and Plaintiffs seek to hold their real estate agent and appraiser liable for the damages that resulted from the alleged overpayment. In their Complaint, Plaintiffs allege that on June 30, 2005, Plaintiff Timothy Michael ("Michael") entered into a Designated Agency Agreement with Defendant Kiawah Island Real Estate ("KIRE"). (Dkt. No. 1). Plaintiffs allege that they worked exclusively with Defendant Gordon Hillock ("Hillock"), a real estate agent with KIRE, from June 15, 2005, through the date they

1

closed on the house, October 6, 2005.[1] Plaintiffs allege that Hillock informed them that he would represent both the buyer and the seller of any house purchased by Plaintiffs. According to Plaintiffs, Michael asked Hillock about a possible conflict of interest arising from the dual representation, and Hillock assured Plaintiffs that he would be on Plaintiffs' "side of the table."

When touring homes with Hillock, one of the homes which Plaintiffs visited was 6 Cottage Lane (the "House"). Plaintiffs allege that Hillock told them that the House would be listed for $3,600,000. Plaintiffs also allege that they asked Hillock about selling prices of the other houses on the same street and that Hillock said that those prices were not published because the development was new. Plaintiffs allege that they repeatedly asked Hillock for prices of certain comparable homes but that Hillock falsely asserted that the prices of such comparable homes would not be appropriate to consider because they were significantly different in both design and materials. Plaintiffs allege that Hillock provided Michael with a list of homes that Hillock asserted were comparable to the House, but that "unknown to Tim Michael, the list was comprised of homes that were substantially larger, located on more attractive marsh lots or beach front properties, and had more expansive views." (Dkt. No. 1 at 4). Plaintiffs allege that they asked Hillock to recommend a price to offer for the House and that Hillock suggested an initial offer of $3,200,000. After several back and forth offers, Plaintiffs and the sellers settled on a purchase price of $3,375,000.

After settling on the purchase price, Plaintiffs applied for a $3,000,000 loan from SunTrust Mortgage, Inc. ("SunTrust"). As a prerequisite to making the loan to Plaintiffs, SunTrust obtained an appraisal of the property from Defendants Lisa McCaskill and Joseph

---

[1] Although Plaintiffs allege that they closed on the house on October 7, 2005 (Dkt. No. 1 at ¶¶ 11, 27), the deed conveying the property to Plaintiffs is dated October 6, 2005. (*See* Dkt. No. 19-2 at 3). This discrepancy is discussed further below.

2

Guerry, both of Defendant The Guerry Group (collectively, "Guerry"). Plaintiffs ultimately closed on the House on October 6, 2005,[2] paying $3,375,000. Plaintiffs allege that Hillock assured them of the fairness of the purchase price and that they relied on the expertise of all of the Defendants in deciding to purchase the House for $3,375,000. Plaintiffs allege that the Defendants, "in tandem and in concert, and/or as a group" engaged "in a conspiracy against plaintiffs for the purpose of injuring and damagint them with regard to the transaction at issue for the value of the subject property." (Dkt. No. 1 at ¶ 53).

Further, Plaintiffs allege that they were not put on notice that they had paid too much for the house until May 20, 2010, when Michael received an itemized "Sale Recap of Marsh Cottage Homeowners Association Homes (29455)" (hereinafter "Sale Recap") from his homeowners association listing the date, address, sale price, square footage, price per square foot, and listing broker for other houses in his neighborhood. After receiving the Sale Recap, Plaintiffs allege that they obtained an independent appraisal of their house which showed that the "property should reasonably have been assessed with a fair market value of $2,500,000 at the time frame of the Resale Home Contract and his purchase." (Dkt. No. 1 at 7). Thus, Plaintiffs allege that they "paid an excessive purchase price for purchase of 6 Club Cottage Lane in the amount of, at least, $875,000.00, constituting the economic damage to plaintiffs." (*Id.* at 8). Plaintiffs allege causes of action for breach of fiduciary duty, fraud, negligence, negligent misrepresentation, constructive fraud, breach of implied contract, civil conspiracy, violation of South Carolina Unfair Trade Practices Act, unjust enrichment, and declaratory relief.[3]

---

[2] *See supra* note 1.
[3] Pursuant to 28 U.S.C. § 1332, the Court has diversity jurisdiction over this suit. Thus, the Court applies South Carolina substantive law. *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

On November 4, 2011, Defendants KIRE and Hillock filed a motion to dismiss pursuant to Rule 12(b)(6), arguing that the applicable statute of limitations bars Plaintiffs' claims. (Dkt. No. 8). On November 29, 2011, the Guerry Defendants filed a motion to dismiss pursuant to Rule 12(b)(6), also arguing that the applicable statute of limitations bars Plaintiff's claims. (Dkt. No. 19).[4] After the motions to dismiss were fully briefed, the Court held oral argument on April 19, 2012.

## II.    Motion to Dismiss Standard

A Rule 12(b)(6) motion "should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). The Court need not accept as true, however, "unwarranted inferences, unreasonable conclusions, or arguments" or "legal conclusions, elements of causes of action or bare assertions devoid of further factual enhancement." *Nemet Chevrolet Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F. 3d 298, 302 (4th Cir. 2008). "Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious defense." *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 181 (4th Cir. 1996). The most

---

[4] On November 28, 2011, SunTrust, then a named Defendant, filed a motion to dismiss pursuant to Rule 12(b)(6) in which SunTrust joined and fully supported the motion to dismiss filed by Defendants KIRE and Hillock on the basis of the statute of limitations, and further arguing several additional bases for dismissal of Plaintiffs' claims against SunTrust. (Dkt. No. 16). However, on April 17, 2012, SunTrust notified the Court that it had settled Plaintiffs' claims against it and that it was withdrawing its motion to dismiss.

common situation in which an affirmative defense appears on the face of the pleading and renders dismissal appropriate is where the complaint shows that the statute of limitations on the claim has run. *Id.* (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 352 (1990)).

## III.   Analysis

Defendants assert that the applicable statute of limitations for each of Plaintiffs' claims is three years.[5] Plaintiffs agree. (*See* Dkt. No. 15 at 5 (Plaintiffs agreeing that "[t]here is no dispute that the Michaels' claims are governed by South Carolina's three-year statutory period of limitations")). In determining when the statute of limitations started to run on each of Plaintiffs' claims, South Carolina applies the "discovery rule."[6] In applying the discovery rule, "the three-year clock starts ticking on the date the injured party either knows or should have known by the exercise of reasonable diligence that a cause of action arises from the wrongful conduct." *Holly Woods Ass'n of Residence Owners v. Hiller*, 708 S.E.2d 787, 793 (S.C. Ct. App. 2011) (quoting

---

[5] *See Glenn v. Bank of Am.*, No. 6:10-1974, 2010 WL 3786171, at *2 (D.S.C. Sept. 22, 2010) (holding that the statute of limitations for civil conspiracy, fraud, and constructive fraud is three years under S.C. Code § 15-3-530(5)); *Cline v. J.E. Faulkner Homes, Inc.*, 597 S.E.2d 27, 28 (S.C. Ct. App. 2004) (holding that the statute of limitations for negligence is three years under S.C. Code § 15-3-530); S.C. Code Ann. § 39-3-530 (three year statute of limitations for a South Carolina Unfair Trade Practices Act claim); *Moore v. Benson*, 700 S.E.2d 273, 277 (S.C. Ct. App. 2010) (three year statute of limitations for a breach of fiduciary duty claim); *Brown v. Green Tree Fin. Servicing Corp.*, No. 2:06-2777, 2008 WL 2157120, at *13-15 (D.S.C. May 19, 2008) (three year statute of limitations for a negligent misrepresentation claim); S.C. Code Ann. § 15-3-530(1) (holding that an action upon a contract, express or implied, has a three year statute of limitations).

[6] *See* S.C. Code Ann. § 15-3-535 (stating that "all actions initiated under Section 15-3-530(5) must be commenced within three years after the person knew or by the exercise of reasonable diligence should have known that he had a cause of action"); *Prince v. Liberty Life Ins. Co.*, 700 S.E.2d 280, 282 (S.C. Ct. App. 2010) ("The discovery rule applies to breach of contract actions."); S.C. Code. Ann. § 39-5-150 (stating that an action under the SCUTPA must be brought within "three years after discovery of the unlawful conduct which is the subject of the suit").

5

*Martin v. Companion Healthcare Corp.*, 593 S.E.2d 624, 627 (S.C. Ct. App. 2004)). "The test for whether the injured party knew or should have known about the cause of action is objective rather than subjective." *Id.* Thus, in applying the discovery rule, the Court must determine whether the circumstances of the case would put a person of common knowledge and experience on notice that some right of his has been invaded, or that some claim against another party might exist. *Id.* "The statute [of limitations] is not delayed until the injured party seeks advice of counsel or develops a full-blown theory of recovery; instead, reasonable diligence requires a plaintiff to 'act with some promptness.'" *Kelly v. Logan, Jolley, & Smith, L.L.P.*, 682 S.E.2d 1, 4-5 (S.C. Ct. App. 2009) (internal citations omitted).

Here, each of Plaintiffs' claims arises from Defendants' alleged failure to prevent Plaintiffs from overpaying for – or, Defendants' alleged encouragement of Plaintiffs to overpay for – the House. Thus, the statute of limitations on Plaintiffs' claims started to run, pursuant to the discovery rule, on the first day that the Plaintiffs knew, or should have known through the exercise of reasonable diligence, that they may have overpaid for the House. Defendants contend that the Plaintiffs knew or should have known of their claims no later than October 6, 2005, the date that Plaintiffs purchased the House. Plaintiffs, on the other hand, contend that they did not know, nor should they have known through the exercise of reasonable diligence, of their claims until May 20, 2010, the date when Plaintiffs received the Sale Recap from their homeowners association.

In support of their position that the statute of limitations on Plaintiffs' claims started to run, pursuant to the discovery rule, on the date Plaintiffs purchased the House, Defendants make two arguments. First, Defendants argue that, as of the date Plaintiffs closed on the House, Plaintiffs *actually* knew, or could have *actually* known through the exercise of reasonable

6

diligence, of the facts and circumstances giving rise to their claims. In support of this argument, Defendants point out that Plaintiffs have alleged that they were skeptical about Hillock's dual representation of Plaintiffs and the sellers, and Defendants argue that Plaintiffs therefore should have conducted more due diligence prior to the purchase to determine whether the price they were paying was fair. For example, Plaintiffs should have, through the exercise of reasonable diligence, determined the sales prices of truly comparable properties and the price that the sellers of the House previously paid for the House. According to Defendants, if Plaintiffs had taken these reasonable steps, they would have discovered facts giving rise to their claims. Further, under this argument, Defendants contend that Plaintiffs should have discovered that the houses which Hillock allegedly identified as comparable to the House were not, in fact, comparable. However, the Court finds that, accepting all well-pleaded allegations in the Complaint as true and drawing all reasonable factual inferences from those facts in the Plaintiffs' favor, Defendants have not established that the statute of limitations bars Plaintiffs' claims pursuant to this argument. Plaintiffs allege that Defendants actively conspired to conceal the true value of the House from Plaintiffs and that Plaintiffs relied on Defendants' expertise in deciding on a purchase price. Accepting these allegations as true for purposes of Defendants' motions, the Court cannot find that, as a matter of law, Plaintiffs *actually* knew, or should have *actually* known through the exercise of reasonable diligence, facts and circumstances giving rise to their claims.

Second, Defendants argue that, under South Carolina law, Plaintiffs had constructive notice of all information in Plaintiffs' chain of title at the time of closing and that the information in Plaintiffs' chain of title put Plaintiffs' on notice of their potential claims. This argument, at first blush, appears to be correct. When applying the discovery rule in the context of claims

relating to real estate, South Carolina courts have held that "[p]roperty owners are charged with constructive notice of instruments recorded in their chain of title." *Binkley v. Rabon Creek Watershed Conservation Dist. of Fountain Inn*, 558 S.E.2d 902, 909 (S.C. Ct. App. 2001). As explained in *Binkley*, "[n]otice of a deed is notice of its whole contents . . . and *it is also notice of whatever matters one would have learned by any inquiry which the recitals of the instrument made it one's duty to pursue.*" *Id.* (emphasis in original) (internal citations omitted). In discussing the doctrine of constructive notice in the context of a property purchaser, the South Carolina Supreme Court has held that a property purchaser "will be charged by operation of law with all knowledge that an investigation by a reasonably cautious and prudent purchaser would have revealed." *Spence v. Spence*, 628 S.E.2d 869, 876 (S.C. 2006). In *Moyle v. Campbell*, the South Carolina Supreme Court held:

> The law imputes to a purchaser of real estate notice of the recitals contained in the written instruments, forming his chain of title, and charges him with the duty of making such reasonable inquiry and investigation as is suggested by the recitals and references therein contained. Generally the means of knowledge and the duty of using them are equivalent to knowledge.

*Moyle v. Campbell*, 119 S.E. 186, 190 (S.C. 1923).

As exhibits to their motion to dismiss, the Guerry Defendants attached a copy of the deed conveying the House to Plaintiffs and a copy of the deed conveying the House to Plaintiffs' grantors. (Dkt. Nos. 19-2 and 19-3).[7] The deed to Plaintiffs, which is dated October 6, 2005, contains a derivation clause which states that the House was conveyed to Plaintiffs' grantors by

---

[7] "On a motion to dismiss 'courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, *and matters of which a court may take judicial notice.*'" *Cobin v. Hearst-Argyle Television, Inc.*, 561 F.Supp.2d 546, 550 (D.S.C. 2008) (emphasis in original) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 U.S. 308, 322 (2007)). The Court may take judicial notice of matters of public record. *Id.* Thus, the Court may consider the deeds to the House in ruling on the Defendants' motions to dismiss.

8

deed dated September 30, 2005, and recorded in Book C-557, Page 92 in the R.M.C. Office for Charleston County, South Carolina. (Dkt. No. 19-2 at 2). The deed to Plaintiffs' grantors, which was, in fact, recorded in Book C-557 at Page 92, shows that Plaintiffs' grantors purchased the House from Club Cottage Associates, LLC, on September 30, 2005, for $2,496,301.57. (Dkt. No. 19-3 at 2). Thus, under South Carolina law, Plaintiffs would typically be on constructive notice at the time of the purchase that they were purchasing the House for over $875,000 more than what the sellers paid for it one week earlier. Plaintiffs would also typically be on constructive notice that they were purchasing the House from four individuals – Sally P. Logan, Donald A. Cross, J. Stephen Olsen, and Andrew M. Head – with different last names, which would indicate that the sellers were likely investors who were attempting to turn a profit on the sale of the House. If Plaintiffs were, in fact, on constructive notice of this information at the time of closing, then the Court would likely find, as a matter of law, that the statute of limitations on Plaintiffs' claims began running on October 6, 2005, and that Plaintiffs' claims are therefore barred.

However, at oral argument on Defendants' motions, Plaintiffs' counsel pointed out certain irregularities on the face of the deeds to the House which give the Court concern. The deed conveying the House to Plaintiffs is dated October 6, 2005, and the notarization indicates that the notary witnessed the deed being executed on October 6, 2005. (Dkt. No. 19-2 at 3). However, the derivation clause in the deed referencing the conveyance of the House to the grantors states:

> This same property conveyed to the Grantor(s) by deed of conveyance from Club Cottage Associates, LLC, dated September 30, 2005, and recorded October 7, 2005, in Book C557, page 92, in the R.M.C. Office for Charleston County, South Carolina.

9

(*Id.* at 2). The number "7" after the word "October," and the "C557" and the "92" were all written in with ink, whereas the rest of the derivation clause was typed. This begs the question of how the notary could have observed the execution of the deed on October 6, 2005, when the derivation clause presumably could not have been filled out until October 7, 2005, when the prior deed was recorded. Neither Plaintiffs' counsel nor Defendants' counsel could explain this irregularity at oral argument because they were not present at the closing in 2005 and have not conducted discovery on this issue. Thus, it is unclear to the Court whether the derivation clause was filled out after the closing on October 6, 2005, and it is unclear to the Court what, if any, information Plaintiffs received constructive notice of through the chain of title. Importantly, if the deed conveying the House to Plaintiffs' grantors was not recorded until after Plaintiffs' closed on the House, then Plaintiffs did not receive constructive notice at the closing of any information in the deed to Plaintiffs' grantors, because such information was not in the chain of title at closing. If this is the case, then Plaintiffs did not receive constructive notice at the time of closing of the price that Plaintiffs' grantors paid for the property seven days earlier. Because of this uncertainty, the Court declines to grant Defendants' motion to dismiss on the basis of Plaintiffs' constructive notice of facts included in the chain of title.

## IV. Conclusion

While the Court denies Defendants' motion to dismiss on the basis of the statute of limitations, the Court denies the motion without prejudice, and Defendants may raise the affirmative defense of the statute of limitations at a later date in a motion for summary judgment if such a motion is supported after discovery. For the foregoing reasons, Defendants' motions to dismiss (Dkt. Nos. 8 and 19) are **DENIED**.

**AND IT IS SO ORDERED.**

_____
Richard M. Gergel
United States District Judge

April 20, 2012
Charleston, South Carolina

11